# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**RICHARD ALLEN SHANEBERGER, II, #249540**

        **Petitioner,**

                                **Civil No: 03-CV-74452**
                                **Honorable Arthur J. Tarnow**
                                **Magistrate Judge R. Steven Whalen**

**v.**

**THOMAS K. BELL[1],**

        **Respondent.**

---

## MEMORANDUM OPINION & ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner's, Richard Allen Shaneberger, II's "Petition for Writ of Habeas Corpus" pursuant to 28 U.S.C. §2254. For the reasons stated below, the Court will deny the Petition.

## I. Introduction

On December 11, 1996, in Mecosta County Circuit Court, Petitioner was convicted in a jury trial of first degree felony murder, in violation of MCL §750.316(1)(b), armed robbery in violation of MCL §750.529, conspiracy to commit armed robbery in violation of MCL §750.157(a), aiding

---

[1]At the time this habeas petition was filed, Petitioner was incarcerated at the Saginaw Correctional Facility where Blaine Lafler was the warden and original respondent. Petitioner is currently housed at the Carson City Correctional Facility where Kurt Jones was the warden. However, the current warden and proper respondent is Thomas K. Bell.

and abetting an armed robbery in violation of MCL §750.529[2], and aiding and abetting a kidnaping in violation of MCL §750.349. *(Sentencing Transcript, pp. 11-14)*. Petitioner was sentenced to life imprisonment without parole for the felony murder conviction to run concurrently with his 20 - 40 year term of imprisonment for the conspiracy convictions.[3]

Petitioner challenges the legality of his conviction and raises four issues for the Court's review: (1) whether the trial court erred when it denied Petitioner's motion for relief from judgment where the issue involved ineffective assistance of appellate counsel and his failure to challenge the admission of Petitioner's custodial statements; (2) whether the trial court erred when it denied Petitioner's motion for relief from judgment where the issue involved ineffective assistance of appellate counsel and his failure to argue that Petitioner's trial counsel was ineffective for failing to seek severance from the co-defendant's, James Rowe's trial; (3) whether appellate counsel's failure to raise the suppression and ineffective assistance of trial counsel issues regarding severance was harmless error; and (4) whether the trial court erred when it denied Petitioner's motion for relief

---

[2]The Michigan Court of Appeals vacated Petitioner's conviction for aiding and abetting an armed robbery. *People v. Shaneberger,* No. 200499, 1998 WL 643097 (Mich. Ct. App. Sept. 18, 1998) (per curiam).

[3]Petitioner also pled guilty to other charges that are unrelated to the conviction which is the subject of this habeas petition. Petitioner pled guilty to 2 counts of armed robbery in Kalamazoo County; and he pled guilty to armed robbery, first degree home invasion and felony firearm in Barry County. He received a 7 to 20 year sentence for his Kalamazoo County conviction. Petitioner received respective 8 - 20 year, 6 - 20 year and 2 year terms of imprisonment for the Barry County convictions.

from judgment where the issue involved its failure to retroactively apply *Crawford v. Washington*[4] to this case.

Respondent asserts that Petitioner's first, second and third claims are procedurally defaulted and/or without merit. As for Petitioner's fourth argument, Respondent contends that the Petitioner is not entitled to rely upon *Crawford v. Washington* pursuant to the retroactivity doctrine set forth in *Teague v. Lane*.[5]

## II. <u>Background</u>

The victim, John East, was a manager at a Radio Shack store located in a strip mall in Big Rapids, Michigan. On December 18, 1995, at approximately 10:00 p.m., John East along with another Radio Shack employee performed the tasks necessary to close the store for the evening. *(Trial Transcript, Vol. II, pp. 195-96).* However, John East, would typically stay in the store alone after his closing employees left in order to clean, do inventory, watch television, etc.; and he did the same on December 18, 1995. *(Trial Transcript, Vol. III, pp. 10-12).* After Mr. East left the store, he would typically go to a local bank on his way home in order to make the night deposit for the store. *Id.*

According to statements to the police made by the Petitioner and his accomplice, James Rowe, the two of them and another gentleman named Justin Gillette "cased" the Radio Shack store where John East was employed and were waiting for him to leave the store as they sat in a pick up

---

[4]*Crawford v. Washington,* 541 U.S. 36 (2004).

[5]*Teague v. Lane,* 489 U.S. 288 (1989).

truck in the parking lot. *(Trial Transcript, Vol. III, pg. 135).* When John East left the store for the evening, Justin Gillette got out of the pick up truck and approached Mr. East with a gun, ordering him to get into his (John East's) vehicle. *(Trial Transcript, Vol. III, pp. 135-36).* Mr. East got into the driver's seat and Mr. Gillette sat in the back seat. *Id.* Mr. Gillette ordered Mr. East to drive; and the Petitioner and Mr. Rowe followed behind the vehicle for several miles. *Id.* Eventually, Mr. East pulled over at Mr. Gillette's direction. *Id.* Petitioner stated that he then heard three "pops" coming from Mr. East's car and saw flashes of light. *Id.* Mr. Gillette left Mr. East's vehicle and got into the pick up truck with the Petitioner and James Rowe. At some point thereafter, Justin Gillette admitted to the Petitioner and to Mr. Rowe that he shot John East because Mr. East saw Mr. Gillette without his mask. *Id.* Both James Rowe and the Petitioner stated that there was no plan to kill anyone and that Justin Gillette was only to take the night deposit funds from Mr. East and leave. *Id.* The trio left the scene, returned to Kalamazoo and spent the stolen night deposit funds on drugs. *(Interview Statement, dated 12/29/95, Amended Petition for Writ of Habeas Corpus, Appendix I, pp. 5-6, 11).*

John East's body was found inside of his car which was parked along side US-131 on December 19, 1995. *(Trial Transcript, Vol. III, pp. 29-30).* He sustained 3 gunshot wounds to the back of his head. *Id.* On December 27, 1995, the Portage police attempted to stop a truck being driven by James Rowe. *(Trial Transcript, Vol. III, pp. 101-02).* Once the vehicle failed to stop, a chase ensued until Mr. Rowe drove the truck into a ditch. *Id.* He proceeded to get out of the vehicle and run into a nearby cornfield. He was chased by the police and ultimately apprehended. Justin Gillette was also in the vehicle. *(Trial Transcript, Vol. III, pg. 103)* He stayed in the truck and

proceeded to commit suicide by shooting himself in the head. *(Trial Transcript, Vol. III, pp. 103-04, 111)*. Petitioner was later picked up by the police and brought in initially for questioning relative to another criminal matter. However, the questioning evolved into ones relevant to this case. After the police took statements from Petitioner and Mr. Rowe, there were admissions that Petitioner along with Mr. Rowe and Mr. Gillette were not only involved in John East's robbery and death, but they also

committed robberies in Kalamazoo County at the "Zoo Bar" and at an individual's home in Barry County. *(Trial Transcript, Vol. III, pp. 112-114, 117-122)*.

## III.  Procedural History

Petitioner appealed his conviction as a matter of right to the Michigan Court of Appeals and raised the following issues: (1) whether there was sufficient evidence to support a felony murder conviction; (2) whether the trial court erred when it allowed evidence of the Zoo Bar robbery and the home invasion to be presented before the jury; (3) whether the trial court erred when it failed to give proper jury instructions; (4) whether Petitioner received effective assistance of counsel; (5) whether the trial court erred when it denied Petitioner's motion for change of venue; (6) whether the trial court erred when it denied Petitioner's suppression motion regarding statements that were tape recorded while Petitioner and James Rowe were sitting in the police car; and (7) whether the prosecutor engaged in misconduct when he made an inflammatory and improper argument.

On September 18, 1998, in an unpublished opinion[6], the Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Shaneberger,* No. 200499, 1998 WL 643097 (Mich. Ct. App. Sept. 18, 1998)(per curiam). Petitioner filed an "Application for Leave to Appeal" with the Michigan Supreme Court raising the same issues he raised before the Michigan Court of Appeals. On July 8, 1999, Petitioner's request for relief was denied. *People v. Shaneberger,* 460 Mich. 871; 598 N.W.2d 351 (Table)(Mich. July 8, 1999). Petitioner subsequently filed a motion for relief from judgment raising the following issues: (1) whether Petitioner was prejudiced by the admission of prior bad act evidence of other armed robberies in which he was involved; (2) whether Petitioner's confession was knowing and voluntary; (3) whether Petitioner was denied effective assistance of counsel; (4) whether the trial transcripts are trustworthy as several pages were discovered missing after his appeal of right was filed; (5) whether the prosecution reneged on a promise to dismiss the felony murder charges against the Petitioner if Petitioner passed a polygraph test; and (6) whether there was cumulative error. Petitioner then filed a supplemental pleading adding the following issues: (1) whether the trial court erred when it denied Petitioner's suppression motion, which subsequently led to a deprivation of Petitioner's Fifth Amendment right against self-incrimination and his right to effective assistance of appellate counsel; (2) whether Petitioner was denied the opportunity to present evidence of intoxication and its effect upon his alleged specific intent to commit the crimes

---

[6]This September 18, 1998 opinion was initially published, but it was rescinded on November 23, 1998 and "shall be treated as an unpublished per curiam," the full text of which is no longer available for viewing. *People v. Shaneberger,* Order, No. 200499; 200500, (Mich. Ct. App. Nov. 23, 1998). "The initial issue that warranted publication was resolved in an order amending the opinion issued on November 13, 1998, thus, publication is no longer necessary." *Id*

with which he has been charged; and (3) whether the trial court erred when it failed to sever the trials of the Petitioner and James Rowe or alternatively failed to conduct one trial with two separate juries; this error resulted in his trial and appellate counsel being ineffective and the preclusion of this issue being raised on appeal.

The trial court denied Petitioner's motion for relief from judgment on March 12, 2001. Petitioner sought an appeal of the trial court's ruling in the form of a delayed application for leave to appeal and raised the same claims. The Michigan Court of Appeals denied Petitioner's request for relief finding that the Petitioner had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Shaneberger,* No. 239649, (Mich. Ct. App. Apr. 30, 2002). Petitioner filed a delayed application for leave to appeal with the Michigan Supreme Court raising the same issues and his request for relief was likewise denied for the same reason. *People v. Shaneberger,* 467 Mich. 914; 655 N.W.2d 557 (Table) (Mich. Dec. 4, 2002).

On November 4, 2003, Petitioner filed a "Petition for Writ of Habeas Corpus," raising the following issues: (1) whether the trial court erred when it denied Petitioner's motion for relief from judgment where the issue involved ineffective assistance of appellate counsel and his failure to challenge the admission of Petitioner's custodial statements ; (2) whether the trial court erred when it denied Petitioner's motion for relief from judgment where the issues involved ineffective assistance of appellate counsel and his failure to argue that Petitioner's trial counsel was ineffective for failing to seek severance of Petitioner's and Mr. Rowe's trial; and (3) whether appellate counsel's failure to raise the suppression and ineffective assistance of trial counsel issues regarding severance was harmless error.

7

Respondent filed his "Answer in Opposition to Petition for Writ of Habeas Corpus" on April 13, 2004. On May 12, 2004, Petitioner filed a motion to stay the habeas action and hold it in abeyance so that he could exhaust an additional claim by filing a second post-conviction motion for relief from judgment with the state courts.[7] The Court granted Petitioner's request on May 19, 2004; and the matter was administratively closed. Petitioner exhausted his remaining claim by filing a motion for relief from judgment with the trial court relative to the *Crawford* issue. The trial court denied Petitioner's motion. Petitioner then filed an "Application for Leave to Appeal" with the Michigan Court of Appeals relative to the same issue which was denied. *People v. Shaneberger*, No. 256500, (Mich. Ct. App. Aug. 2, 2004). Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same issue. The Michigan Supreme Court denied Petitioner relief finding that his "motion for relief from judgment is prohibited by MCR 6.502(G)." *People v. Shaneberger*, 472 Mich. 853; 691 N.W.2d 456 (Table)(Mich. Jan. 27, 2005). Petitioner filed a motion for reconsideration with the Michigan Supreme Court which was also denied. *People v. Shaneberger*, 472 Mich. 897; 695 N.W.2d 75 (Table)(Mich. Apr. 26, 2005).

On May 25, 2005, Petitioner filed a motion to amend his habeas petition with this Court. On June 15, 2005, the Court reinstated Petitioner's habeas petition and granted his motion to amend the habeas petition. Petitioner timely filed his "Amended Petition for Writ of Habeas Corpus." The

---

[7]On May 10, 2004 Petitioner filed a second motion for relief from judgment in the Mecosta County Circuit Court, in which he sought to raise a Confrontation Clause claim in light of the United States Supreme Court's recent decision in *Crawford v. Washington,* 546 U.S. 36 (2004), which overruled the Supreme Court's holding in *Ohio v. Roberts,* 448 U.S. 56 (1980) regarding the admissibility of an unavailable witness' statement against a defendant at trial.

matter is presently before the Court to review.  For the reasons stated below, the Court will deny the

Petition.

## IV.  <u>Standard of Review</u>

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that application

must also be unreasonable." *Id.* at 410-11.

## V.  Applicable Analysis

> A.  Petitioner's Motion for Relief from Judgment Relative to
>      Ineffective Assistance of Appellate Counsel Claims

Petitioner asserts that he received ineffective assistance of appellate counsel because there

was a failure to raise two issues on direct appeal: (1) whether Petitioner's custodial statements should

have been suppressed; and (2) whether trial counsel was ineffective for failing to request that

Petitioner's trial be severed from co-defendant's, James Rowe's, trial. These issues were raised for

the first time in Petitioner's motion for relief from judgment on collateral review. Therefore, the

issue of procedural default must be addressed. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files

an untimely appeal, if he fails to present an issue to a state appellate court at his only opportunity

to do so, or if he fails to comply with a state procedural rule that required him to have done

something at trial to preserve his claimed error for appellate review. *Id.* at 752; *Rust v. Zent,* 17 F.3d

155, 160 (6th Cir. 1994); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir. 1996). Petitioner's claim

is subject to procedural default for two reasons.

First, the Michigan Court of Appeals denied leave to appeal on the ground that Petitioner failed "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Shaneberger,* No. 239649, (Mich. Ct. App. Apr. 30, 2002). Second, Petitioner's application for leave to appeal with the Michigan Supreme Court, was denied "because the [petitioner] [] failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Shaneberger,* 467 Mich. 914; 655 N.W.2d 557 (Table)(Mich. Dec. 4, 2002).

> MCR 6.508(D) applies to motions for relief from judgment, and states, in relevant part:
>
> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion . . . (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter unless the defendant demonstrates (a) good cause . . . , and (b) actual prejudice . . .

MCR 6.508(D)(3). The Michigan Court of Appeals and the Michigan Supreme Court decisions relative to this case, clearly demonstrate the state courts' intention to invoke an "independent and adequate state procedural rule" by the reference to MCR 6.508(D). See *Abela v. Martin,* 380 F.3d 915, 922 (6th Cr. 2004). Accordingly, procedural default has been established in this case.

Petitioner's only option to avoid denial of habeas relief relative to these procedurally defaulted claims is to assert cause to excuse Petitioner's procedural default. Petitioner claims that his appellate attorney's failure to raise the above stated issues on direct appeal constituted ineffective assistance of appellate counsel, thereby substantiating good cause for the claims not being raised timely. Appellate counsel cannot be expected to assert his or her own ineffectiveness on appeal.

Therefore, Petitioner's asserted ineffective assistance of appellate counsel at the first opportunity to do so on collateral review is not a defaulted claim; and the issue will be reviewed by the Court on the merits. *Whiting v. Burt,* 395 F.3d 602, 610, n.6 (6th Cir. 2005).

### 1. *Suppression of Statements Following Petitioner's Invocation of the Right to Remain Silent*

The Court will first consider Petitioner's claim of ineffective assistance of appellate counsel for failing to raise on direct appeal the issue regarding the trial court's failure to suppress Petitioner's custodial statements on the merits.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, Petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment." *Id.* at 687. Second, the Petitioner must show that counsel's deficient performance prejudiced him. The Petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial." *Id.* at 689.

"Appellate counsel may deliver deficient performance and prejudice by omitting a 'dead-bang winner,' which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. See *Meade v. Lavigne,* 265 F.Supp.2d 849, 870 (E.D. Mich. 2003)(internal citations omitted)." *Horton v. Jones,* 2006 WL 2364871, *5 (E.D. Mich. Aug. 15, 2006)(Cohn, J). Petitioner must therefore show that appellate counsel was ineffective by omitting on direct appeal the claim presented in his subsequent motion for relief from judgment (i.e., trial

12

counsel's failure to suppress Petitioner's custodial statements). The Court concludes that Petitioner has not shown that appellate counsel's strategy relative to this suppression claim was deficient and unreasonable, nor that the underlying issue is a "dead-bang winner." Accordingly, he cannot show that the trial court's decision in its review of Petitioner's motion for relief from judgment was contrary to or an unreasonable application of Supreme Court precedent. The Court's reasoning is two-fold.

a. Assertion of Right to Remain Silent

First, the Court finds that even though the appellate attorney did not raise the issue, his performance as Petitioner's appellate advocate was not deficient and erroneous to the point of being ineffective. Petitioner maintains that he invoked his right to remain silent and his desire to have an attorney when Detective Sergeant Daniel began his interrogation.

It is Petitioner's position that any questioning following the invocation of that right was in complete disregard of his right to remain silent and his "right to cut off questioning." Consequently, any statements obtained after the assertion of his Fifth Amendment right were done so in an unconstitutional manner and should not have been admitted into evidence. This is the argument Petitioner contends should have been raised on direct appeal.

The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself. *U.S. Const. Amend. V.* In *Miranda,* the Supreme Court held that, to protect a suspect's Fifth Amendment rights, an individual who has been taken into custody or otherwise deprived of his freedom and is questioned must be advised prior to any questioning, "that

he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him." *Id.* at 478-79; See also *Dickerson v. United States,* 530 U.S. 428, 435 (2000). Law enforcement officers must cease questioning a suspect who invokes his or her right to remain silent or to have an attorney present. *Id.* at 473-74. "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends . . . on whether his 'right to cut off questioning' was 'scrupulously honored." *Michigan v. Mosley,* 423 U.S. 96, 104 (1975).

Under *Mosley* a court considers several factors when assessing whether officers have violated a suspect's invocation of his right to remain silent: (1) whether the suspect was advised before the initial interrogation that he had the right to remain silent; (2) whether questioning stopped immediately once the suspect asserted his right to remain silent; (3) whether the police waited a significant period of time after the suspect's invocation of his right to remain silent before questioning him again; (4) whether the suspect received fresh *Miranda* warnings before the interview leading to his statement; and (5) whether the final interrogation concerned a crime that was the subject of the first interrogation. *Id.* at 96.

Detective Richard Rau was assisting in the investigation of John East's murder in Big Rapids, Michigan and had a conversation with James Rowe, at which time, Mr. Rowe implicated the Petitioner in the robbery and shooting of John East. *Id.* Detective Rau had planned to go to the Portage area in order to find the Petitioner. When Detective Rau arrived in Portage, he went to the local police department; and unbeknownst to him, the Petitioner had been arrested for a home

invasion charge and was already at the police station. After Detective Sergeant Daniel ceased his interrogation, Detective Rau entered the room where the Petitioner was being held and told the Petitioner not to speak, but just to listen. *Id.* Detective Rau proceeded to inform the Petitioner that he had just spoken with James Rowe and that Mr. Rowe implicated him in the Big Rapids robbery. *Id.* Detective Rau then left and returned to Big Rapids. *Id.*

Shortly thereafter, Petitioner was transported by Trooper Gutierrez from the Portage City Police Department to the Barry County Jail in Hastings, Michigan, which was approximately an hour and a half away. *(Id. at 1, 30-31).* Trooper Gutierrez testified that during the ride, the Petitioner became emotional and stated that he wanted to get some things "off his chest." *(Id. at 1, 32-33, 44).* Trooper Gutierrez interpreted Petitioner's statement as meaning that he wanted to initiate a conversation about the criminal activity of which he has been accused. *(Id. at 1, 32-33, 44).* Trooper Gutierrez asked the Petitioner if he remembered his *Miranda* warnings. *Id.* Petitioner responded in the affirmative, and still indicated that he wanted to talk to Trooper Gutierrez. *Id.* The trooper read Petitioner his *Miranda* rights again, Petitioner acknowledged his understanding of them, and Petitioner told Trooper Gutierrez that he had not killed anyone. *(Id. at 1, 34-35, 45, 79).* During the car ride, Trooper Gutierrez admits that he made statements to the Petitioner regarding: (1) the truth needing to be told; (2) how he "should clear things up; (3) how Mr. East was a good man who did not deserve to die; (4) how Mr. East had an 80 year old mother for whom he was the sole provider; and (5) asked Petitioner if he did not shoot Mr. East then who did. *(Id. at 45-46, 73, 77).* Petitioner continued to be very emotional (i.e., crying) during the car ride and would only say that

15

he did not shoot Mr. East, how he had not been sleeping or eating well, and how "things were bothering him." *(Id. at 1, 46-47).*

Upon arriving at the Barry County Jail, Trooper Gutierrez asked the Petitioner, "who shot the guy up north in the robbery?" *(Id. at 47-48).* Petitioner became upset again, but then explained to Trooper Gutierrez what transpired in Big Rapids. *(Id. at 52).* Detective Sergeant Daniel was contacted by Trooper Gutierrez and the two of them *Mirandized* the Petitioner again, and interviewed him regarding the Big Rapids robbery. *(Id. at 35-36).* Subsequently, Detective Rau was contacted; and he arrived at the Barry County Jail to question the Petitioner. *(Id. at 88-90).* After Detective Sergeant Daniel and Trooper Gutierrez were done with their interrogation, Detective Rau read Petitioner his *Miranda* warning and proceeded with his interview. *Id.*

Petitioner's position is two fold: (1) nothing more should have been said to the Petitioner after the statement he made at the Portage Police Department about his father and an attorney[8] ; and (2) Trooper Gutierrez's conversation about John East, his family and doing the right thing amounted to coercion and an initiation of the conversation leading up to Petitioner's full confession. Applying these facts to the *Mosley* factors, the Court finds that appellate counsel's decision not to raise this issue on direct appeal does not amount to ineffective assistance of counsel. First, there is no dispute that Petitioner was advised of his *Miranda* rights before the initial interrogation which

---

[8]Petitioner told the police during questioning that he wanted to wait for his father in order to get advice; and that his father may retain an attorney to represent his (Petitioner's) interests. At the time of Petitioner's conviction he was 26 years of age.

took place at the Portage City Police Department. Second, there is no dispute that Detective

Sergeant Daniel's questioning

stopped immediately after Petitioner's statements about waiting for his father and an attorney

possibly being retained.

Third, the Court finds that the issue of whether Trooper Gutierrez waited a "significant

period of time" between the assertion of Petitioner's right to remain silent and the questioning in the

car is moot since Petitioner waived his right to remain silent prior to Trooper Gutierrez's additional

inquiries about John East's death. A valid waiver of a right to remain silent must be voluntary and

knowing and intelligent. *Colorado v. Connelly,* 479 U.S. 157, 170 (1986). Whether a waiver is

voluntary depends on the absence of police coercion, intimidation or deception. *Id.* Whether a

waiver is knowing and intelligent depends on if the defendant was aware of his available options.

*Id.* In this case, Petitioner initiated the conversation by telling Trooper Gutierrez that he wanted

to "get [something] off his chest." It was only after that statement that Petitioner was *Mirandized*

again by Trooper Gutierrez and he proceeded to inquire about who shot Mr. East. It was also after

Petitioner made that statement that Trooper Gutierrez made the statements about Mr. East, his

family and doing the right thing.

Petitioner's retort is that the only information he volunteered to Trooper Gutierrez is that

he did not kill Mr. East, and that there was no full confession until after Trooper Gutierrez's

comments about Mr. East, his family and doing the right thing. The Court finds that the record does

not support evidence of Trooper Gutierrez being coercive, deceptive or intimidating in an effort to

"wear down" the Petitioner and obtain a confession. Rather, the record indicates that before Trooper Gutierrez said anything to the Petitioner about Mr. East's death, he was already very emotional, distressed, crying and indicated that he was mentally feeling very badly. *(Motion Transcript, 32, 42, 53)*. After Trooper Gutierrez's statements, Petitioner continued to be upset and admitted that he had not been sleeping or eating well and that things were bothering him. *(Id. at 46-47)*. Additionally, the record supports the fact that Petitioner was read his *Miranda* warnings by each law enforcement official who questioned the Petitioner about Mr. East's death; and the Petitioner acknowledged those *Miranda* warnings and proceeded to speak with the law enforcement officials about what happened to John East.

Furthermore, the fact that Petitioner was questioned by more than one officer relative to this matter is of no moment. The Court must base its determination regarding the voluntariness of a statement by evaluating the totality of the circumstances (i.e., the actions of all police officers involved) as to whether Petitioner was overborne by the law enforcement officials to cooperate. *United States v. Mendoza*, 85. F.3d 1347, 1350-51 (8th Cir. 1996). Therefore, the actions of one officer may not dictate whether the Petitioner was "worn down" to make a statement. The facts of this case do not indicate as such. Therefore, the Court finds that Petitioner effectively waived his right to remain silent.

Fourth, as previously stated, Petitioner received fresh *Miranda* warnings before each interview leading to his confession. Finally, Detective Sergeant Daniel's initial interrogation did not concern the crime involving Mr. East's death, but rather concerned a home invasion that took place in Barry

County. The Court does not find that the law enforcement officials in this matter violated Petitioner's invocation of his right to remain silent. Therefore, the issue regarding whether Petitioner's statements should have been suppressed after his assertion of that right is not a claim which is a "dead bang winner." Accordingly, appellate counsel's decision not to raise the claim on direct appeal does not amount to ineffective assistance. Since the trial court's decision regarding this matter was not decided upon contrarily to clearly established federal law as determined by the United States Supreme Court, habeas relief relative to this issue is denied.

b. Assertion of Right to Counsel

Second, Petitioner did not testify at the suppression hearing. It was revealed, however, that after Detective Sergeant Daniel informed the Petitioner that he was under arrest, and after he read Petitioner his *Miranda* rights Petitioner stated that he wanted to wait for his father in order to get advice. *(Motion Hearing Transcript, dated 12/2/96, pp. 86-88).* He further stated that if his father felt he should have an attorney, then his father would be responsible for retaining one; and he wanted to wait for his father and his decision regarding counsel before speaking with the police any further. *Id.*

Several years after *Miranda* the Court elaborated on the right to counsel component in *Edwards v. Arizona,* 451 U.S. 477 (1981). If a suspect clearly invokes his right to have counsel present during an interrogation, then no further questioning is permitted. *Edwards v. Arizona,* 451 U.S. at 483-84. The invocation, however, must be clear in order for the right to be invoked. *Davis v. United States,* 512 U.S. 452, 462 (1994).

19

In *Davis,* the Supreme Court held that further questioning was permitted after the suspect said, "maybe I should talk to a lawyer," because the statement was too equivocal to invoke the suspect's right to counsel. *Id.* The *Davis* Court held that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. The *Davis* Court noted that officers do not have to ask clarifying questions, but they are free to if the request is ambiguous or equivocal. *Id.* at 462.

The Court finds that Petitioner did not invoke his right to counsel because the statements were equivocal and ambiguous. The credible testimony of Detective Sergeant Daniel shows that Petitioner stated that he wanted to wait for his father's advice and decision as to whether or not he would retain an attorney for Petitioner. Moreover, there is no dispute that Petitioner was advised of his *Miranda* rights before the initial interrogation. Additionally, there is no dispute that Detective Sergeant Daniel's questioning stopped immediately after Petitioner's statements about waiting for his father and an attorney possibly being retained, despite the fact that Petitioner's statement about the possibility of retaining counsel was equivocal. More importantly, Petitioner did not make any other statements concerning wanting a lawyer.

*Davis* involved an equivocal invocation of the right to counsel under *Miranda v. Arizona,* 384 U.S. 436 (1966). However, "every circuit that has addressed the issue squarely has concluded that *Davis* applies to both components of *Miranda*: the right to counsel and the right to remain silent." *Bui v. DiPaola,* 170 F.3d 232, 239 (1st Cir. 1999). The Sixth Circuit, by which this court is bound,

is among this group of courts. *United States v. Hurst,* 228 F.3d 751, 759-60 (6th Cir. 2000). Since

the application of *Mosley,* results in a finding that the law enforcement officials in this case did not

violate Petitioner's invocation of his right to remain silent; and the Court has found that Petitioner's

right to counsel has not been violated, appellate counsel's decision not to raise these issues on direct

appeal would not amount to ineffective assistance of counsel as these claims are not "dead-bang

winners." Therefore, the state court decision relative to this claim did not result in one contrary to

clearly established federal law as determined by the United States Supreme court. Habeas

relief relative to the issue is likewise denied.

### 2. Severance of Trial

Petitioner's next claim is that his trial counsel was ineffective due to his failure to move for

a severance of his trial from that of the co-defendant, James Rowe[9]. Accordingly, Petitioner asserts

that his appellate counsel was ineffective for failing to raise the issue on direct appeal. Motions to

sever create an issue of case management. *Willard v. Pearson,* 823 F.2d 1141, 1149 (7th Cir. 1987).

Therefore, "any errors alleged in the management of a state criminal trial do not deny the defendant

due process of law, unless they are so harmful to the cause of truth that, singly or cumulatively, they

make the defendant's conviction fundamentally unfair." *Bell v. Duckworth,* 861 F.2d 169, 170 (7th

Cir. 1988) (citations omitted). Defendants must show "substantial, undue, or compelling prejudice"

to obtain a severance. *United States v. Mays,* 69 F.3d 116, 120 (6th Cir. 1995). "[W]hen a

---

[9]Petitioner and James Rowe were tried together following the decision of the trial court granting the prosecution's motion to consolidate the cases.

defendant seeks a severance, he has a heavy burden of showing specific and compelling prejudice." *United States v. Harris,* 9 F.3d 493, 500 (6th Cir. 1993).

Petitioner contends that the only significant evidence linking him to the co-defendant, James Rowe, was their statements to the police, which caused a Confrontation Clause problem. Petitioner contends that the "specific and compelling prejudice" is the violation of his Sixth Amendment right to confront his accuser, James Rowe since neither testified at trial. Consequently, it is Petitioner's position that trial counsel was ineffective due to his failure to recognize the *Bruton* issue and seek to sever the trial as a result, as the jury would not have heard James Rowe's out of court statements but for the circumstance of a joint trial. See, *Bruton v. United States,* 391 U.S. 123, 127 (1968) (the government cannot endeavor to present hearsay statements of a non-testifying co-defendant through the testimony of a witness). Accordingly, appellate counsel was likewise deficient by failing to raise on direct appeal trial counsel's ineffectiveness relative to this matter.

"Confrontation Clause cases are subject to a harmless error analysis on habeas review." *Robinson v. Stegall,* 48 Fed. Appx. 111, 113 (6th Cir. 2002), citing, *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986). To determine whether the trial court's Confrontation Clause error was harmless, the Court must examine the following factors: (1) the importance of the witness' testimony to the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's

case. See *Stapleton v. Wolfe*, 288 F.3d 863, 867-68 (2002), citing *Delaware v. Van Arsdall,* 475 U.S. at 684.

Although, Petitioner has correctly identified a technical violation of his right to confront witnesses, the alleged error was harmless as he was not deprived of a fundamentally fair trial. The Court's reasoning is three-fold. First, this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993); *Ferensic v Birkett,* __ F.3d. __ (No. 06-2342, 6th Cir, 2007). Therefore, the alleged Confrontation Clause violation must have caused Petitioner substantial injury relative to receiving a fair trial in this case. Applying the *Van Arsdall* factors, although James Rowe's statement served to buttress Petitioner's statement, it added very little to what Petitioner said in his own statement and was therefore cumulative. Besides the fact that Petitioner stated that he heard the gunshots and saw flashes of light after Mr. East was shot by Justin Gillette and James Rowe's statement that he did not realize that Mr. Gillette shot and killed Mr. East until the following day, their version of the remainder of the circumstances surrounding Mr. East's death was very similar. *(Trial Transcript, Vol. III, pp. 135-37 & "Interview with James Rowe, dated 12/19/95).* Petitioner and James Rowe did not have mutually antagonistic defenses. Both of their statements indicated that they were only interested in taking Mr. East's money and that neither of them had any intention of killing him. They also both stated that Justin Gillette was the shooter.

Moreover, in addition to Petitioner's statement, a transcript of a conversation, which was tape recorded, between Petitioner and James Rowe while in the back seat of the patrol vehicle was

23

strong evidence against the Petitioner regarding Mr. Gillette and their involvement with shooting. The testimony of the law enforcement officials also served as very damaging testimony against the Petitioner during his trial. Therefore, Petitioner's assertion that James Rowe's statement was the only evidence linking Petitioner to John East's death is inaccurate; and the prosecution's case had a degree of strength with or without the admission of James Rowe's statement in light of the other evidence. Accordingly, the *Van Arsdall* factors favor a finding of no Constitutional violation.

Furthermore, the case record, including testimony produced at hearings, offers no compelling indication as to how either James Rowe or Petitioner was prejudiced by joinder, particularly to the extent necessary to overcome the preference for joinder of defendant in conspiracy cases, *infra*. Specifically, it is not patently apparent that a jury would be unable to distinguish and apply the evidence relating to Petitioner from evidence relating to James Rowe, and there has not been a persuasive showing that the joined trial prevented the introduction of exculpatory evidence or precluded clarification of arguably inculpatory statements made by James Rowe with regard to Petitioner. Joinder of Petitioner and James Rowe in this case was not improper and severance was not required in light of the record. Second, one of the offenses which Petitioner and James Rowe were convicted of was conspiracy to commit armed robbery. Persons charged with conspiracy should generally be tried together and it will rarely be improper for co-conspirators to be tried together. *United States v. Kindle*, 925 F.2d 272, 277 (8th Cir. 1991). Nonetheless, the court may grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or

24

innocence." *Zafiro v. United States,* 506 U.S. 534, 539 (1993). Based upon the foregoing, the Court does not find such a serious risk or compromised trial right.

Finally, given the congruity of the statements by the Petitioner and James Rowe, the presentation of James Rowe's statements to the jury must be considered harmless. "Where a jury hears testimony that essentially reiterates a petitioner's statement without additional damaging testimony, no substantial and injurious effect or influence is injected into the trial." *Norman v. Bradshaw,* 2006 WL 3253121, *14 (N.D. Ohio Nov. 8, 2006). The circumstances of this case particularly lend itself to the joint trial of Petitioner and James Rowe. Therefore, trial counsel's failure to move for a severance of the trial cannot reasonably be construed as resulting in ineffective assistance of counsel where based upon the facts, such a motion was unlikely to be granted.

Consequently, Petitioner's claim that he suffered "specific and compelling" prejudice as a result of trial counsel's failure to move for severance is without merit and not an issue which is a "dead-bang winner." Accordingly, appellate counsel's failure to raise the matter on direct appeal was not exemplary of ineffective assistance of appellate counsel. Habeas relief is therefore, not warranted relative to this claim.

B. Retroactive Application of *Crawford v. Washington*

Petitioner raised the issue in his second motion for relief from judgment of whether *Crawford v. Washington* should have been applied retroactively to his case in light of the fact that Petitioner was convicted on December 11, 1996 and *Crawford v. Washington* was decided in 2004.

*Crawford v. Washington,* 541 U.S. 36 (2004). The U.S. Supreme Court in *Crawford*[10] limited the rule

established in *Ohio v. Roberts,* 448 U.S. 56 (1980)[11] as it relates to the admissibility of hearsay

testimony. While the *Crawford* Court overruled *Roberts, Crawford* does not apply retroactively to

cases on collateral review. *Whorton v. Bockting,* ___ U.S.___, 127 S. Ct. 1173, 1183-84, ___ L.E. ___

(2007). The Supreme Court has never made *Crawford* applicable to cases on collateral review. The

Sixth Circuit has likewise held that *Crawford* does not apply retroactively to cases on collateral

review. *Dorchy v. Jones,* 398 F.3d 783, 788 (6th Cir. 2005) Therefore, the *Roberts* test must be

applied to determine whether the record demonstrates particularized guarantees of trustworthiness,

in light of the totality of the circumstances, that render the evidence admissible and worthy of belief

in the absence of cross-examination. *Ohio v. Roberts,* 448 U.S. at 66. James Rowe's statements were

those of a co-conspirator. Under *Roberts* hearsay can be admitted into evidence without violating

the Confrontation Clause when the statement either falls within a firmly-rooted exception to the

---

[10]The *Crawford* Court held that "where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one on the indicium of reliability is sufficient to satisfy the constitutional demands is the one Constitution which actually prescribes: confrontation. *Crawford v. Washington,* 541 U.S. 36, 68 (2004). The Court found that testimonial statements of witnesses absent from trial may be admitted (1) only where the declarant is unavailable; and (2) only where the defendant has had a prior opportunity to cross examine the witness. *Id.*

[11]The Court in *Roberts* maintained that "reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts,* 448 U.S. 56, 66 (1980) Any about of court testimonial statement made by an unavailable declarant could be admitted provided that te judge found that it bore adequate indicia of reliability. *Id.* Applying this logic, the Supreme Court held that the statement of a non-testifying declarant could be used against a defendant at trial so long as the declarant was unavailable and the statement was reliable. *Id.*

hearsay rule or contains particularized guarantees of trustworthiness. *Id.* Case law provides that co-conspirator statements are within a firmly- rooted exception to the hearsay rule. *Bourjaily v. United States,* 484 U.S. 171, 184-87.

Therefore, the trial court did not engage in an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court when it rejected Petitioner's argument that *Crawford* should be applied retroactively to this case. As previously stated, James Rowe's statements were consistent with the Petitioner's version of events. Therefore, if Petitioner's right to confront James Rowe at trial was violated, the error was harmless as he had not been deprived of a fundamentally fair trial, as set forth above.

Since successive motions for relief from judgment are prohibited absent a showing of a "retroactive change in the law that occurred after the motion for relief judgment or a claim of new evidence that was not discovered before the first such motion," and Petitioner has failed to make either showing, habeas relief is properly denied relative to this claim. *MCR 6.502(G)(2).*

**VII.  Conclusion**

For the foregoing reasons, the Court concludes that Petitioner's claims for habeas relief filed pursuant to 28 U.S.C. §2254 lack merit.  Consequently, Petitioner's application for federal habeas corpus relief shall be dismissed and the writ denied.

IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus **[Doc. #1, filed November 4, 2003]** is **DENIED** and this matter is **DISMISSED WITH PREJUDICE.**


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  September 6, 2007


I hereby certify that a copy of the foregoing document was served upon counsel of record on September 6, 2007, by electronic and/or ordinary mail.


S/Catherine A. Pickles
Judicial Secretary